BUCKEYE UNION INS. CO., APPELLEE, *v.* COOPERMAN, ADMR., APPELLANT.

[Cite as Buckeye Union Ins. Co. v. Cooperman (1972), 33 Ohio App. 2d 152.]

(No. 72AP-133—Decided September 12, 1972.)

*Mr. Richard K. Elliott,* for appellee.
*Mr. Nelson Lancione,* for appellant.

HOLMES, J. This is an appeal of a summary judgment for the plaintiff in the Common Pleas Court of Franklin County—a petition seeking a declaratory judgment having been filed by the plaintiff insurance company praying for an interpretation of the applicability of the "uninsured motorist" endorsement contained in an automobile liability insurance policy issued to the appellant's decedent.

The subject insurance policy sold and delivered by plaintiff, The Buckeye Union Insurance Company, contained what might be characterized as a standard "uninsured motorist" endorsement. At issue is the requirement, as found within such policy, that before a valid claim can be presented under the "uninsured motorist" endorsement,

insofar as it applies to a "hit-and-run automobile," there must have been a "physical contact between the unidentified automobile" and the insured vehicle.

The facts of the accident, as set forth in plaintiff's petition, are not in dispute. On September 14, 1969, at approximately 6:30 p. m., Howard S. Cooperman, son of Jack Cooperman, the defendant and appellant herein, an "insured" under the policy in question, was operating an "insured" automobile on Pennsylvania state route 426 at its intersection with township route 499 in Wayne Township, Erie County, Pennsylvania. At or near this intersection, Howard S. Cooperman observed an automobile, heading in the opposite direction, cross the center line of the roadway and approach his vehicle. In order to avoid this oncoming automobile, Cooperman swerved to the right onto the berm of the highway, losing control of his automobile and causing it eventually to flip in the air and land on its roof. Howard S. Cooperman died as a result of the injuries sustained in this accident.

The decedent's father, the administrator of Howard's estate, filed, on February 27, 1970, a demand for arbitration with the American Arbitration Association for the purpose of arbitrating a claim under the "uninsured motorist" provision of the automobile policy issued by Buckeye Union to the deceased.

The plaintiff Buckeye Union refused to arbitrate the claim, and thereupon filed the declaratory judgment action, wherein the trial court granted a summary judgment to the plaintiff.

The defendant makes the following single assignment of error:

"That the lower court erred in sustaining plaintiff's motion for summary judgment, and in overruling motion of the defendant for a summary judgment."

It is the defendant's contention that the interpretation placed by the insurance company upon its "physical contact" requirement found within the "uninsured motorist" endorsement of its policy is contrary to, and violates, the public policy of this state as indicated by the

adoption of R. C. 3937.18 which requires insurance companies offering automobile liability insurance to include with each policy uninsured motorist coverage with certain prescribed minimum limits.

At the outset, it would be well for us to briefly review just what is the nature of the insurance as required by R. C. 3937.18.

In *Abate* v. *Pioneer Mutual Cas. Co.* (1970), 22 Ohio St. 2d 161, the court, speaking through Justice Corrigan, referred to "uninsured motorist" coverage, at page 165, as follows:

"Uninsured motorist coverage is a relatively new adjunct to the automobile insurance policy, and is designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated. R. C. 3937.-18 makes mandatory the offering of uninsured motorist coverage by insurance companies licensed in the state of Ohio."

Many questions and issues have arisen over the years in the interpretation of such section, not the least of which has been the definition and determination as to what constitutes an "uninsured motorist" under the statute.

The difficulty of generally defining what constitutes an "uninsured motorist," under state statutes providing mandatory coverage for such, is discussed in an A. L. R. annotation entitled Automobile Insurance: What Constitutes an "Uninsured" or "Unknown" Vehicle or Motorist, Within Uninsured Motorist Coverage. Such annotation, found in 26 A. L. R. 3d 883, at page 887, reads as follows:

"The circumstances under which it has been contended that a vehicle by which injury was caused was uninsured, so as to render applicable uninsured motorist coverage, are widely varied, and it is impossible to give a meaning to the term 'uninsured,' as used in this type of insurance, that will prove valuable in more than a few of these situations. * * *"

The annotation referred to above informs us that

many state statutes providing for "uninsured" motorist coverage contain various definitions of what constitutes an uninsured motorist, or an uninsured vehicle. Further, such article states that the definition often describes an uninsured vehicle as one having no insurance "applicable to the accident" or "applicable at the time of the accident."

Further, it is pointed out in such annotation that some jurisdictions provide by statute, by way of definition and coverage inclusion, that a vehicle is uninsured where the insurer thereof denies coverage. Ohio has just such a provision, to be found in R. C. 3937.18(B).

Additionally, in some states the statutory definition of an insured vehicle includes situations where the insurer of the other motorist is, or becomes, insolvent. Ohio includes such a definition, as found in the last mentioned section, and it reads as follows:

"For the purpose of this section, a motor vehicle is uninsured if the liability insurer denies coverage or is or becomes the subject of insolvency proceedings in any jurisdiction."

In addition to those instances where the "uninsured" status of a motorist is determined by the absence or inadequacy of insurance, the failure of the policy to cover the particular accident or injury, the denial of coverage by the insurer, or the insolvency of the insurer, there may be coverage provided either by statute or by the particular contract of insurance where the accident and resulting damage is occasioned by an "unknown" or "hit-and-run driver" who leaves the scene of the accident without being identified. In this regard, see the annotation in 26 A. L. R. 3d 883, *supra* at 913.

Speaking of the peculiarities of such type of coverage, where there is an "unknown" or "hit-and-run driver," the last stated annotation sets forth the following:

"There is a substantial possibility of fraud on the insurer issuing this type of coverage. * * * For this reason it is generally required that a hit-and-run accident be reported to the authorities within 24 hours after its oc-

currence, and that diligent and reasonable efforts be made by the insured to discover the identity of the owner or operator of the other vehicle. Likewise, the requirement is sometimes made that there be tangible evidence of physical contact with the unknown vehicle, for the same reason.''

The ''uninsured motorists'' law of Ohio is silent on the requirements of coverage for ''unknown'' or ''hit-and-run'' vehicles. However, insurance policies providing for such coverage are not uncommon in the trade within Ohio.

The insurance policy before us contains clauses covering both the situation where the automobile colliding with the insured has no insurance coverage applicable at the time of the accident, as well as where there is a hit-and-run automobile involved in such accident. The applicable clauses from such policy of insurance in question are as follows:

'' *'Coverage J—Protection Against Uninsured Motorist (Damages for Bodily Injury)*

''To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.'

'' * * *

''*Definitions*

'' * * *

'' '*uninsured automobile*' includes a trailer of any type and means: (a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsi-

bility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or (b) a hit-and-run automobile;

" * * *

" 'hit-and-run automoblie' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (a) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile'; (b) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (c) at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident."

It will be noted that the policy states that " 'hit-and-run automobile' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident."

Of course, it is obvious that since the uninsured motorist law in Ohio is silent as to required coverage in the instance of a "hit-and-run" accident, there is no amplification of the subject, or definition as to what constitutes coverage under such an unknown vehicle type of policy.

Neither is there to be found any enlightenment from the

Ohio case law on this particular question. Such being the fact, we must then look to the case law in other states hopefully to lend us some help with the problem.

The following is stated in an annotation at 25 A. L. R. 2d 1299, page 1303:

"In a few states requiring insurance companies to offer uninsured motorist insurance, the statutes have specifically provided that where recovery is sought for injury caused by a 'hit-and-run' or other unidentified vehicle, the claimant must show that there was physical contact with the unidentified vehicle. * * *"

What in fact is viewed to be "physical contact," within the meaning of the statutes, has occasioned some interesting cases in those jurisdictions which require a showing of physical contact.

In the state of California, a Court of Appeals held that where an unknown vehicle strikes an intervening vehicle, causing it to collide with that of the insured, the statutory "physical contact" requirement has been satisfied since the unknown vehicle may validly be said to have contacted that of the insured through the medium of the intervening vehicle. *Inter-Ins. Exchange* v. *Lopez* (1965), 238 Cal. App. 2d 441, 47 Cal. Rptr. 834.

Under a differing fact situation, where the insured plaintiff's car had been hit by another auto which had swerved in order to avoid being struck by an unknown vehicle, a California Court of Appeals denied recovery. *Page* v. *Ins. Co. of North America* (1967), 256 Cal. App. 2d 374, 64 Cal. Rptr. 89.

The court in the latter case stated that not even the indirect contact found in the earlier California case was present in the instant case, since there had been no contact with the unknown vehicle by either the insured or the motorist whose vehicle struck that of the insured.

In *Coker* v. *Nationwide Ins. Co.* (1968), 251 S. C. 175, 161 S. E. 2d 175, the court denied recovery where the insured had been injured when his automobile had been hit by an auto which was racing with an unknown vehicle. Again, this court in denying coverage pointed out that there

had been no contact between the unknown vehicle and any vehicle actually involved in the collision.

In *Motor Vehicle Acc. Indem. Corp.* v. *Eisenberg* (1966), 18 N. Y. 2d 1, 271 N. Y. Supp. 2d 641, it was held that where the insured was struck by a vehicle which allegedly had been pushed across the center divider by a hit-and-run vehicle, the "physical contact" required by the statute in the case of a "hit-and-run" vehicle was satisfied.

However, there are a number of states which provide for "uninsured motorist" coverage, but, like Ohio, do not specifically include the "unknown" or "hit-and-run" vehicle within such statutory enactments.

Where such coverage has not been included with the statutory provisions, it may generally be found within the uninsured motorist endorsements in automobile insurance policies.

A review of the authorities in such jurisdictions tends to show that the courts have generally upheld the validity of such provisions as found in this type of "uninsured motorist" endorsement. As noted in the annotation at 25 A. L. R. 3d 1299, page 1306:

"The courts have generally held this provision valid, as not being in conflict with the statutory requirements for such insurance, and as a proper attempt to prevent fraud on the insurer in cases where the insured is injured through his own negligence but alleges that an unidentified vehicle caused the injury, attempting thereby to render the uninsured motorist protection applicable."

"*US—State Farm Mut. Auto. Ins. Co.* v. *Spinola* (1967, CA5 Fla.) 374 F2d 873.

"*Ariz—Lawrence* v. *Beneficial Fire & Casualty Ins. Co.* (1968) 8 Ariz App 155, 444 P2d 446.

"*Conn—Frager* v. *Pennsylvania General Ins. Co.* (1967) 155 Conn 270, 231 A2d 531.

"*Fla—Cruger* v. *Allstate Ins. Co.* (1964, Fla App) 162 So 2d 690.

"*Ill—Prosk* v. *Allstate Ins. Co.* (1967) 82 Ill App 2d 457, 226 NE2d 498, 25 ALR3d 1294.

"*La—Roloff* v. *Liberty Mut. Ins. Co.* (1966, La App) 191 So 2d 901.

"*Wash—Johnson* v. *State Farm Mut. Auto. Ins. Co.* (1967) 70 Wash 2d 587, 424 P2d 648."

Another case in the same regard is *Ely* v. *State Farm Mut. Auto Ins. Co.* (1971), 268 N. E. 2d 316, in which case the court, in referring to a provision in the policy requiring physical contact, stated as follows:

"The policy requirement of 'physical contact' is not unreasonable and does not unduly restrict the statute. * * * [I]ts function is to define the risk underwritten by the insurers in this state so that fulfillment of the liberal aims of the law is not incompatible with the economic realities of insurance coverage."

It is interesting to note that as a variable to most of the statutes providing for coverage for "hit-and-run" vehicles, the "uninsured motorist" laws of the state of Illinois, Ill. Ann. Stat. ch. 73, § 755 a (Smith-Hurd 1965), include a "hit-and-run" driver within the meaning of the provisions thereunder, but do not require a showing of physical contact.

In the case of *Prosk* v. *Allstate Ins. Co.* (1967), 82 Ill. App. 2d 457, 226 N. E. 2d 498, the court held that a provision of an automobile insurance policy requiring physical contact in a hit-and-run situation did not conflict with the statute, and that such statute was not intended to include unidentified cars that may be present at the scene of an occurrence of bodily injury without a physical contact of the unindentified motor vehicle with the insured or an automobile occupied by the insured.

The contrary result has been reached in at least one jurisdiction in the reported case of *Brown* v. *Progressive Mut. Ins. Co.* (Fla. 1971), 249 So. 2d 429, in which we find the following in the third paragraph of the syllabus of the split decision of the court:

"The only reason for uninsured motorist policy requirement of physical contact is to prove that accident actually did occur as a claimant may say it did; this is a question of fact to be determined by the jury, or the judge if demand for a jury trial is not made; if injured party

can sustain burden of proof that accident did occur, he should be entitled to recover, regardless of actuality of physical contact."

In Ohio, as stated, we have no specific requirement that there be coverage of the "unknown," "unidentified" or "hit-and-run" vehicle within the uninsured motorist coverage; therefore, there is no definition of the breadth or extent of such type coverage, or statutory requirement of a showing of "physical contact."

Such coverage and the attendant limitation thereon have been included by the act of the insuring companies within the terms of the policy, as in the instant case. The terms of such policy of insurance in this regard are then a matter of contract between the parties, and should be upheld if found not to be in conflict generally with the insurance laws of the state of Ohio, nor in conflict specifically with R. C. 3937.18, and if found not to be unreasonable, burdensome or against public policy.

We hold that the provisions of the instant policy requiring a showing of physical contact in the instance of claimed damage occasioned by a "hit-and-run" vehicle are not in conflict generally with the insurance laws of the state of Ohio, nor with R. C. 3937.18, nor are such provisions unreasonable, burdensome or against public policy of this state.

If the import of R. C. 3937.18 is to include "unknown," "unidentified" or "hit-and-run" vehicles, within "uninsured motorist" coverage where automobile insurance policies exclude such coverage in the absence of physical contact, any additional breadth must be added through the legislative process.

We endorse the language as found within headnote 4 of *Ely* v. *State Farm Mut. Auto. Ins. Co., supra,* that a "Court cannot rewrite clear and unambiguous language of insurance contract[s] regardless of the equitable merits of the argument advanced for doing so."

The judgment of the Common Pleas Court of Franklin County is hereby affirmed.

*Judgment affirmed.*

TROOP, P. J., concurs.

WHITESIDE, J., dissenting. While I concur with the majority finding that the allegedly uninsured automobile involved in this case was not a "hit-and-run automobile" as defined in the policy, I must dissent because I find that such determination is not dispositive of the issues.

To constitute a hit-and-run autombile, the policy requires "physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident." In this case there was no physical contact. Since there was no physical contact, the provisos included in the definition have no application, and there is no need to determine whether they are consistent with R. C. 3937.18.

The provision of the policy relied upon is merely a definition of the term "hit-and-run automobile." The fact that a given automobile may not meet that definition does not preclude coverage. The policy includes two definitions of "uninsured automobile." The second is "hit-and-run automobile"; the first is stated as being an automobile with respect to which there is "no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile." The inclusion of hit-and-run automobiles does not limit or vary the general definition of uninsured automobile contained in the policy. Likewise, the definition of hit-and-run automobile in the policy cannot limit or vary the meaning of the term "uninsured motor vehicles" as used in R. C. 3937.18.

R. C. 3937.18 requires that an automobile liability insurance policy include provision "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." The statute does not define what constitutes "uninsured motor vehicles" except to provide that "a motor vehicle is uninsured if the liability insurer denies coverage or is or becomes the subject of insolvency proceedings in any jurisdiction."

Operators of motor vehicles have been held liable for

injuries proximately resulting from the negligent operation thereof even though there has been no physical contact with the injured party or the motor vehicle in which he was riding, *e. g., Bennett* v. *Krauss* (1956), 100 Ohio App. 495. Even though there was no physical contact, had the identity of the operator of the other automobile been ascertained, and, he would have been uninsured, the uninsured motorists coverage would be available to defendant. Plaintiff, in effect, contends that, where the identity of the operator of the other automobile cannot be ascertained, such other automobile cannot be an uninsured automobile in the absence of proof that there was "physical contact." Neither R. C. 3937.18 nor the policy so provides.

An uninsured automobile, as defined in the policy, is one with respect to which there is no liability "insurance policy applicable at the time of the accident." While the one claiming coverage under an insurance policy must bear the burden of proving coverage, burden of proof does not dispose of the issue. Where a person injured claims that he is legally entitled to recover damages from the operator of a motor vehicle but proves that he is unable to ascertain the identity of such operator, it is impossible to ascertain whether or not such operator, in fact, has liability insurance coverage.

However, the policy definition does not depend upon the existence of such a policy but, rather, depends upon whether or not such a policy is "applicable." Applicable means capable of being applied. See *Whitney* v. *American Fidelity Co.* (Mass. 1969), 215 N. E. 2d 767. Where the identity of the operator of a motor vehicle cannot be ascertained, any liability insurance policy which may exist is not capable of being applied.

I would, therefore, hold that, under the circumstances of this case, there was no bodily injury liability insurance policy *applicable* at the time of the accident with respect to the person claimed to be legally responsible for the use of the unknown automobile involved. Thus, such unknown automobile is an "uninsured automobile" within the policy definition, even though it was not a hit-and-run automobile.

In my opinion, any contrary conclusion involves a rewriting of the policy definition to substitute "in effect" or words of similar import, for the word "applicable" as used in the policy.

Whether R. C. 3937.18 requires uninsured motorist coverage to include only situations where there is no liability insurance policy in effect, or requires such coverage to include all situations in which there is no liability insurance capable of being applied, need not be determined in this case.

In *Curran* v. *State Auto. Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33, Justice Corrigan stated, at page 38:

"The purpose of uninsured motorist protection was described by this court in *Abate* v. *Pioneer Mutual Cas. Co.* (1970), 22 Ohio St. 2d 161, 165, as follows:

" 'Uninsured motorist coverage * * * is designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated.'

"R. C. 3937.18 itself indicates that uninsured motorist coverage is 'for the protection of *persons insured* thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *.' (Emphasis added.)

"Given this express statutory purpose, we are of the opinion that the uninsured motorist statute should be construed liberally in order to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists. * * *"

The uninsured motorists coverage provision of the policy should similarly be liberally construed.

Plaintiff in drafting the definition of uninsured automobile included in the policy chose to use the word "applicable" rather than the words "in effect" or words of similar import. Any ambiguity or uncertainty in the meaning of the language used in the insurance policy must be resolved in favor of the insured. This is the rule set forth in the first paragraph of the syllabus of *Munchick* v. *Fidelity & Casualty Co.* (1965), 2 Ohio St. 2d 303, which reads as follows:

"1. A contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous. (Paragraph one of the syllabus of *Toms* v. *Hartford Fire Ins. Co.*, 146 Ohio St. 39, approved and followed.)"

Furthermore, there is a general presumption that that which is not clearly excluded from the operation of an insurance policy is included therein. *The Home Indemnity Co.* v. *Plymouth* (1945), 146 Ohio St. 96.

The policy contains no language excluding unknown or unidentified automobiles, which do not qualify as hit-and-run automobiles, from the operation of the uninsured motorist coverage. The language respecting hit-and-run automobiles is language of inclusion, not language of exclusion.

Had plaintiff wished to exclude unknown or unidentified automobiles, other than hit-and-run automobiles, from the uninsured motorist coverage, language to that effect could have been inserted into the policy, assuming such exclusion would be consistent with R. C. 3937.18. Plaintiff failed to insert such an exclusion into the policy. In the absence of any express language of exclusion, such an exclusion can be inserted into a policy only by construing the policy liberally in favor of the insurer rather than liberally in favor of the insured.

Plaintiff contends that one of the purposes of requiring physical contact is to prevent fraudulent claims. Assuming that to be a valid purpose, neither R. C. 3937.18 nor the policy expressly exclude coverage in circumstances where there is no physical contact. Furthermore, plaintiff makes no contention that the other automobile did not in fact exist, nor otherwise contends that the claim involved is a fraudulent claim. If no other automobile were involved, there could be no uninsured automobile.

Such issue can be raised as a basis for denying coverage. When put in issue, the burden of proof is upon the insured to prove the existence of the unknown or unidentified vehicle. With such burden of proof being upon the insured, the probability of such a fraudulent claim being successfully asserted is remote, unless one has little faith

in the ability of our judicial system to ferret out truth and render justice.

Furthermore, the issue of the existence of the unidentified or unknown vehicle can also be raised in arbitration proceedings pursuant to the policy upon the issue of "whether the insured or such representative is legally entitled to recover such damages." If the unknown or unidentified automobile did not exist, or, if, it did exist but the operator thereof was not negligent, the insured could not be legally entitled to recover damages.

The exclusion that plaintiff seeks to have engrafted upon the policy would not be limited in effect to avoiding fraudulent claims, but would also bar all valid claims falling within its scope. The basic issue herein is whether, where it is proved that it is impossible to determine if a motor vehicle is, in fact, insured or uninsured, such motor vehicle is to be deemed to be insured or uninsured under the uninsured motorist coverage of the policy. I would conclude that, under such circumstances, there is no liability insurance policy applicable within the meaning of the language of the policy and, thus, the uninsured motorist coverage is available to the insured.

Accordingly, I would reverse.