PEGGY WEINGARTEN *v.* ALLSTATE INSURANCE COMPANY

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued April 1—decision released September 16, 1975

*Sidney Axelrod,* for the appellant (plaintiff).

*James T. Haviland II,* for the appellee (defendant).

HOUSE, C. J. This is an appeal from a judgment of the Superior Court denying the plaintiff's application for an order directing the defendant to proceed with arbitration of her claim against an unidentified motor vehicle operator. The facts, which are not the subject of dispute, are as follows: On December 4, 1968, the plaintiff was operating her husband's insured automobile on route 12, a public highway in Ledyard. While operating this automobile northerly on route 12, an unidentified automobile proceeding northerly directly in front of the plaintiff suddenly and without warning came to a halt. As a result of the stopping of the unidentified vehicle in front of her, the plaintiff skidded into the southbound lane and collided with another automobile operated by Stephen P. Cormier in a southerly direction on route 12. The collision with the Cormier vehicle resulted in bodily injuries to the plaintiff.

The plaintiff has been unable to determine the name of the operator or owner of the vehicle which stopped suddenly in front of her and she has no knowledge of any available or applicable insurance on that vehicle.

On the date of the accident, there was in effect an automobile insurance policy with "uninsured motorist coverage" issued by the defendant to Morris P. Weingarten, the husband of the plaintiff. As the wife of the named insured living in his household, the plaintiff was an insured person covered by the policy. The policy contained a written agreement for arbitration. The plaintiff made a claim against the defendant under the uninsured motorist protection provisions of the policy and made demand that the defendant arbitrate her claim.

The defendant refused to submit to arbitration the plaintiff's claim against the unknown operator on the basis that the occurrence in question was not covered by the applicable provisions of the uninsured motorist provisions of the insurance contract.

On the basis of the foregoing facts, the court reached the following conclusions to which the plaintiff has assigned error: coverage for a hit-and-run motorist was not included within the coverage afforded under the uninsured motorist clause of the policy in question; the insurance policy in question complied with the applicable provisions of statute and regulation for minimum coverage as to uninsured motorists. The court also overruled the plaintiff's claims of law that (1) under the provisions of § 38-175c of the General Statutes, and administrative regulations supplementary thereto; Regs. Conn. State Agencies § 38-175a-6; a no-contact accident with an unidentified automobile should be included within the minimum limits of uninsured motorists coverage of an automobile liability policy; and (2) since the uninsured motorist clause did not exclude coverage for a no-contact accident with an unidentified vehicle, such coverage was included. Conclusions are not erroneous unless they violate law, logic or reason or are inconsistent with the subordinate facts. The court's conclusions are to be tested by the findings and not the evidence. *Hames* v. *Hames,* 163 Conn. 588, 592, 316 A.2d 379; *Hutensky* v. *Avon,* 163 Conn. 433, 437, 311 A.2d 92. Conclusions logically supported by the finding must stand. *Freccia* v. *Martin,* 163 Conn. 160, 162, 302 A.2d 280.

At the time of the accident in question, the controlling statutes were those adopted by 1967 Public Acts, No. 510, which was in part incorporated into

the General Statutes as §§ 38-175a through
38-175d, the relevant portions of which are copied
in footnote 1. The administrative regulation
adopted by the insurance commissioner is
§ 38-175a-6 (a), entitled "Minimum Provision for
Protection against Uninsured Motorists," and pro-
vided: "The insurer shall undertake to pay on
behalf of the insured all sums which the insured
shall be legally entitled to recover as damages from
the owner or operator of an uninsured automobile
because of bodily injury sustained by the insured
caused by an accident involving the uninsured auto-
mobile. This coverage shall insure the occupants
of every automobile to which the bodily injury lia-
bility coverage applies. 'Uninsured automobile'
includes an automobile insured against liability by
an insurer that is or becomes insolvent."

---

[1] "[General Statutes] Sec. 38-175a. MINIMUM PROVISIONS IN AUTO-
MOBILE LIABILITY POLICIES. (a) Within ninety days from October 1,
1967, and from time to time thereafter, the insurance commissioner
shall adopt regulations with respect to minimum provisions to be
included in automobile liability insurance policies issued after the
effective date of such regulations and covering private passenger
automobiles registered or principally garaged in this state. Such
regulations shall relate to the insuring agreements, exclusions, con-
ditions and other terms applicable to the bodily injury liability,
property damage liability, medical payments and uninsured motorists
coverages under such policies and shall make mandatory the inclu-
sion of bodily injury liability, property damage liability and unin-
sured motorists coverages. . . .

"Sec. 38-175b. MINIMUM COVERAGE. Every such policy shall provide
insurance in accordance with such regulations against loss resulting
from the liability imposed by law, with limits not less than those
specified in subsection (a) of section 14-112, for damages because
of bodily injury or death of any person and injury to or destruction
of property arising out of the ownership, maintenance or use of a
specific motor vehicle or motor vehicles within the state, or elsewhere
in the United States in North America or in the Dominion of Canada.

"Sec. 38-175c. UNINSURED MOTORIST COVERAGE. Every such policy
shall provide insurance in accordance with such regulations, with

The insurance policy in effect at the time of the accident provided: "Allstate will pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use or such automobile." The policy also included the following definitions: " '[U]ninsured automobile' means an automobile: 1. with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance applicable at the time of accident; or 2. used without the permission of the owner thereof if there is no bodily injury liability insurance applicable at the time of the accident with respect to the operator thereof; provided, however, an uninsured automobile shall not include: 1. an automobile owned by the named insured or any resident of his household, or self insured within

limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles or of insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured.

"Sec. 38-175d. POLICIES DEEMED TO PROVIDE COVERAGE IN ACCORDANCE WITH REGULATIONS. Policies affording bodily injury liability, property damage liability and uninsured motorist coverages to which the provisions of sections 38-175a to 38-175e, inclusive, apply shall be deemed to provide insurance under such coverages in accordance with such regulations. Policies affording medical payments coverage to which the provisions of said sections apply shall be deemed to provide insurance under such coverage in accordance with such regulations."

the meaning of the safety responsibility law of the State or Province in which it is registered, or which is owned either by the United States, Canada, any political subdivision thereof or any agency of any of them; 2. a land motor vehicle or trailer operated on rails or crawler treads; 3. a farm-type tractor or equipment designed for use principally off public roads except while actually upon public roads; or 4. a land motor vehicle or trailer while located for use as a residence or premises and not as a vehicle."

We conclude that the trial court correctly held that the requirements of the statute and regulations were met by the defendant's policy in effect at the time of the accident and that the uninsured motorist coverage of the policy does not include coverage in the present situation where the accident was caused by an unidentified motorist and it is impossible to ascertain whether or not that motorist was insured.

The statute and regulations do not define "uninsured motorist" or in any way refer to what are commonly called hit-and-run operators. They merely require that every policy contain "uninsured motorist coverage." " '[C]ourts cannot read into the terms of a statute something which manifestly is not there in order to reach what the court thinks would be a just result.' *State* v. *Malm,* 143 Conn. 462, 467, 123 A.2d 276. Much less does the plaintiff's unfortunate circumstance justify this court's disregarding the legislative mandate that words used in statutes 'shall be construed according to the commonly approved usage of the language.' General Statutes § 1-1. A due regard for the differing functions of the legislative and judicial branches of government requires that the courts

refrain from rewriting, under the pretext of interpretation, the clearly expressed language of a legislative enactment which the court deems to be preferable to that which the legislation requires. 'In the field of legislation, the legislature is supreme. Courts must apply legislative enactments according to their plain terms.' *State* v. *Malm,* supra." *Simonette* v. *Great American Ins. Co.,* 165 Conn. 466, 471, 338 A.2d 453. An "uninsured motorist" clearly is not the same as an "unidentified motorist" and "[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Marcolini* v. *Allstate Ins. Co.,* 160 Conn. 280, 284, 278 A.2d 796. In the same context of uninsured motorist coverage, we refused to interpret that term in the statute and regulations as meaning an underinsured motorist; *Simonette* v. *Great American Ins. Co.,* supra; *Marcolini* v. *Allstate Ins. Co.,* supra; or the word "automobile" as including a motorcycle.

The plaintiff's policy contained the coverage required by the statute and regulations and defined an uninsured automobile as already indicated. It is to be noted that unlike the express provisions of the policy discussed in *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 272, 231 A.2d 531, and many cases noted in Later Case Service, supplementing the note in 79 A.L.R.2d 1252, the plaintiff's policy did not make any provisions, even of a limited nature, for the circumstances of a hit-and-run accident. The plaintiff contends that the phrase in the policy "no bodily injury liability insurance applicable at the time of accident" covers the unidentified motorist situation. Further, the plaintiff

argues that this phrase creates an ambiguity in the meaning of the terms used in the insurance policy which must be resolved in favor of the insured. An identical argument was raised in the case of *Lenngren* v. *Travelers Indemnity Co.*, 26 Misc. 2d 1084, 203 N.Y.S.2d 136, aff'd, 20 App. Div. 2d 850, 249 N.Y.S.2d 400. In that case the court responded by saying: "The difficulty with the plaintiff's position is that it presupposes an ambiguity that requires construction. I find none. I find that the policy does not, in express terms, include a hit-and-run automobile in its definition of an uninsured automobile, and no intent to do so can be read into the policy by any reasonable interpretation of the language used. Nor is there any basis for the assumption that the policy was intended to include hit-and-run automobiles in addition to uninsured automobiles . . . . To attempt to read any such coverage into the policy would be to torture and twist the language from its plain meaning. I find the language of the policy and the indorsement to be clear and unambiguous permitting of no such construction." Id., 1085.

We find such reasoning persuasive. The terms of the insurance policy issued by the defendant in the present case are clear and unambiguous. The applicable Connecticut rule of construction of insurance policies is fully stated in *Porto* v. *Metropolitan Life Ins. Co.*, 120 Conn. 196, 200, 180 A. 289. "If the terms of an insurance policy are of doubtful meaning, that permissible construction which is most favorable to the insured is to be adopted; but if they are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties

is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties. *Komroff* v. *Maryland Casualty Co.*, 105 Conn. 402, 405, 135 A. 388." The rule is well recognized. *Aschenbrenner* v. *United States Fidelity & Guaranty Co.*, 292 U.S. 80, 84, 54 S. Ct. 590, 78 L. Ed. 1137; *Dover* v. *Standard Accident Ins. Co.*, 92 N.H. 59, 60, 24 A.2d 496; *Ross* v. *Protective Indemnity Co.*, 135 Conn. 150, 152, 62 A.2d 340. It was incumbent upon the plaintiff to bring herself within the express terms of the policy. *Miller Bros. Construction Co.* v. *Maryland Casualty Co.*, 113 Conn. 504, 513, 155 A. 709. She failed to do this and was not entitled to an order to proceed with arbitration. Having thus decided the foregoing issues, we find it is unnecessary to discuss the plaintiff's remaining claims of error.

There is no error.

In this opinion LOISELLE and MACDONALD, Js., concurred.

LONGO, J. (dissenting). The basic issue in this case is whether the policy issued by the defendant as governed by state law and regulations affords uninsured motorist protection to the plaintiff where the alleged tortfeasor was unidentified. In this state, the interpretation of automobile liability insurance policies is affected by two considerations. As the policy constitutes a contract between the insured and the insurer, we apply the words of the agreement to execute the intentions of the parties as manifested thereby. *Marcolini* v. *Allstate Ins. Co.*, 160 Conn. 280, 283, 278 A.2d 796. "Con-

tracts of private parties cannot vary obligations imposed by law." *Panaroni* v. *Johnson,* 158 Conn. 92, 104, 256 A.2d 246. Accordingly, the second consideration in interpreting the policy is, in this case, the legislation[1] and regulations applicable by force of law.[2]

The parties bargained that the insured was to receive uninsured motorist coverage. The principle of insurance law which provides that where there is ambiguity, coverage is to be presumed, is in conformance with contract principles requiring a court to construe a clause against the party who drew up that clause. *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.,* 153 Conn. 618, 622, 220 A.2d 32; 17A C.J.S., Contracts, § 324. Furthermore, motorists purchase insurance not merely to fulfill a public responsibility, but, more fundamentally, to forestall their own possible financial suffering and ruin, arising from their use of the highways. The clear purport of uninsured motorist coverage is that where the tortfeasor cannot be made to defray the motorist's damages from bodily injury caused by the accident, the insured's insurance company will, at least to the limits of the policy. *Bryant* v. *State Farm Mutual Automobile Ins. Co.,* 205 Va. 897, 140 S.E.2d 817; *Southern* v. *Lumbermens Mutual Casualty Co.,* 236 F. Sup. 370, 372 (W.D. Va.).

[1] See footnote 1 of the majority opinion.

[2] "[Regs. Conn. State Agencies] Sec. 38-175a-6. MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS. (a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured caused by an accident involving the uninsured automobile. This coverage shall insure the occupants of every automobile to which the bodily injury liability coverage applies. 'Uninsured automobile' includes an automobile insured against liability by an insurer that is or becomes insolvent. . . ."

Where the tortfeasor is unidentified, there is no source other than the insured's policy from which recompense can be attained.

Independently of the terms of the policy, the legislature has required uninsured motorist coverage.[3] In so doing, it has followed the majority of jurisdictions in the United States. See, e.g., *Carter* v. *Saint Paul Fire & Marine Ins. Co.,* 283 F. Sup. 384, 388 (E.D. Ark.), aff'd sub nom. *Vaught* v. *State Farm Fire & Casualty Co.,* 413 F.2d 539; *First National Ins. Co. of America* v. *Devine,* 211 So. 2d 587, 589 (Fla. App.); *Buck* v. *United States Fidelity & Guaranty Co.,* 265 N.C. 285, 144 S.E.2d 34; *Touchette* v. *Northwestern Mutual Ins. Co.,* 80 Wash. 2d 327, 332–33, 494 P.2d 479. Many jurisdictions make specific provision to include unidentified motorist within the definition of uninsured motorist, often styling them as "hit-and-run drivers." At least one trial court has dicta to the contrary. *Lenngren* v. *Travelers Indemnity Co.,* 26 Misc. 2d 1084, 203 N.Y.S.2d 136 (holding that there was insufficient evidence to show that the decedent was killed by an automobile, affirmed without opinion, 20 App. Div. 2d 850, 249 N.Y.S.2d 400); but contra, *In re Merchants Mutual Ins. Co.,* 56 Misc. 2d 360, 363, 288 N.Y.S.2d 822. In the majority of those jurisdictions where there are no specific references to the unidentified motorist with respect to statutes mandating uninsured motorist coverage, the courts have reasoned that from the injured's point of view, where there is an unidentified tortfeasor, there is an uninsured tortfeasor, and hence the insured must be covered.[4] *State Farm Fire & Casualty Co.* v.

---

[3] See footnote 1 of the majority opinion.

[4] This is manifested in reliance on the term "capable of being applied" as a test of whether there exists an applicable policy. See, e.g., *Hodges* v. *Canal Ins. Co.,* 223 So. 2d 630, 633–34 (Miss.).

*Lambert,* 291 Ala. 645, 285 So. 2d 917; *Balestrieri* v. *Hartford Accident & Indemnity Ins. Co.,* 22 Ariz. App. 255, 526 P.2d 779; *Farmers Ins. Exchange* v. *McDermott,* 527 P.2d 918, 920 (Colo. App.); *DeMello* v. *First Ins. Co. of Hawaii,* 55 Hawaii 519, 523 P.2d 304; *Buckeye Union Ins. Co.* v. *Cooperman,* 33 Ohio App. 2d 152, 293 N.E.2d 293; *Webb* v. *United Services Automobile Assn.,* 227 Pa. Super. 508, 323 A.2d 737; *Schleif* v. *Hardware Dealer's Mutual Fire Ins. Co.,* 218 Tenn. 489, 404 S.W.2d 490, 491. "[T]he test should not be simply whether or not the injured party can prove the offending party was uninsured, which is, in many instances, impossible in hit-and-run cases. Any other construction of the statute is unfair and unduly restricts the application intended by the Legislature." *Brown* v. *Progressive Mutual Ins. Co.,* 249 So. 2d 429, 430 (Fla.).

In requiring that coverage to extend to damage inflicted by unidentified motorists, the state has considerations additional to protecting the accident victim from financial disaster. In Connecticut, the coverage is part of a plan to encourage the financial responsibility of motorists. 12 H.R. Proc., pt. 8, 1967 Sess., p. 3296. The purchase of the motorist liability policy benefits the individual, the insurance company and the public. In addition to liability coverage, the policy protects the insured against the uninsured public, and the public against a motorist who would otherwise be uninsured. *Touchette* v. *Northwestern Mutual Ins. Co.,* supra, 332. The intent to close off gaps on insurance coverage has been consistently manifested, most recently in the enactment of Connecticut's no-fault insurance law. See General Statutes c. 690; *Gentile* v. *Altermatt,* 169 Conn. 267, 363 A.2d 1. Thus,

the intent manifested in legislation controlling the terms of motorist liability policies issued in this state, as well as in the uninsured motorist clause of the plaintiff's policy itself, is and was that the insured must be covered for damages arising from injuries suffered from unidentified motorists. This case does not involve underinsurance as opposed to uninsurance as did *Simonette* v. *Great American Ins. Co.,* 165 Conn. 466, 472, 338 A.2d 453; nor is there any claim that the accident was not caused by an automobile as in *Marcolini* v. *Allstate Ins. Co.,* 160 Conn. 280, 284, 278 A.2d 796.

The defendant, in its brief, contends that even if coverage with respect to unidentified motorists were mandated by a provision concerning them, such coverage should not apply to the plaintiff in the present case, because there was no contact between her vehicle and that of the unidentified motorist.[5] Under the statutory schemes of some states, there is express reference to "hit-and-run" accidents. See, e.g., *Hartford Accident & Indemnity Co.* v. *Novak,* 83 Wash. 2d 576, 582, 520 P.2d 1368.

The rationale of the contact requirement is that it prevents fraud. *Mazon* v. *Farmers Insurance Exchange,* 13 Ariz. App. 298, 300, 475 P.2d 957, vacated on other grounds, 107 Ariz. 601, 491 P.2d 455; annot., 25 A.L.R.3d 1299. Indirect physical contact, however, has been found to satisfy the requirement. *Latham* v. *Mountain States Mutual Casualty Co.,* 482 S.W.2d 655, 657 (Tex. Civ. App.); *Inter-Ins. Exchange of The Automobile Club of*

---

[5] There does appear to be a duty to attempt to ascertain the identity of the tortfeasor which has been satisfied by the plaintiff. *Hart* v. *Doe,* 261 S.C. 116, 198 S.E.2d 526; *Members Mutual Ins. Co.* v. *Tapp,* 469 S.W.2d 792 (Tex.).

*Southern California* v. *Lopez,* 238 Cal. App. 2d 441, 446, 47 Cal. Rptr. 834. The contact requirement has not been adopted in the majority of jurisdictions, especially where a statutory basis for imposing a "hit" requirement is not clearly evidenced. See, e.g., *Farmers Ins. Exchange* v. *Colton,* 264 Ore. 210, 504 P.2d 1041. Such a requirement has been attacked as unduly unjust and inflexible. "An alert, athletic pedestrian who barely manages to avoid contact with . . . [a negligent unidentified hit-and-run] car by leaping through a plate glass display window receives the unkindest cuts of all for his efforts, but cannot qualify." Notman, Uninsured Motorist Coverage: A Current Analysis, 55 Ill. B.J. 142, 147. "The argument that the policy requirement of physical contact is reasonable is fallacious. The only reason for such a requirement is to prove that the accident actually did occur as a claimant may say it did. This is a question of fact to be determined by the . . . [trier of fact] . . . . If the injured party can sustain the burden of proof that an accident did occur, he should be entitled to recover, regardless of the actuality of physical contact. If twenty witnesses will swear they saw the accident happen, their testimony should not be deemed worthless, as it would be under the decision here for review." *Brown* v. *Progressive Mutual Ins. Co.,* supra, 430. See Widiss, A Guide to Uninsured Motorist Coverage; cf. *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 277, 231 A.2d 531. Quite consistently with the considerations meriting mandatory uninsured motorist coverage in insurance policies, the legislature did not provide that contact should be a prerequisite to recovery under its provisions. The courts will not whittle down the terms of the stat-

ute by independently imposing a contact require-
ment, nor will policy provisions purporting to
impose contact as precedent to recovery be upheld.
*State Farm Fire & Casualty Co. v. Lambert*, supra,
649; *Balestrieri v. Hartford Accident & Indemnity
Ins. Co.*, supra; *Farmers Ins. Exchange v. McDer-
mott*, supra, 920; *DeMello v. First Ins. Co. of
Hawaii*, supra; *Webb v. United Services Auto-
mobile Assn.*, supra; *Bryant v. State Farm Mutual
Automobile Ins. Co.*, supra; *Hartford Accident &
Indemnity Co. v. Novak*, supra, 579, 585; cf. *Frager
v. Pennsylvania General Ins. Co.*, supra, 279; 12
S. Proc., pt. 4, 1967 Sess., p. 1957.

This does not imply that every plaintiff should
automatically recover a claim under uninsured
motorist provision coverage. What is required by
the statutes, as since amended, and by the terms
of the plaintiff's policy, is that the case move to
arbitration, where the claims of the plaintiff can
be weighed against the insurer's claim that the
accident was caused by a phantom tortfeasor. The
trier of fact would be able to judge the credibility
of the claimant, and whether recovery should be
barred due to her negligence.

I would find error and set aside the judgment and
remand the case with direction to render judgment
granting the relief prayed for in the plaintiff's
application.

In this opinion BOGDANSKI, J., concurred.