**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**Bonnie L. BINKER, Individually, as Administratrix of the Estate of Carl William Binker, Jr., and as Legal Representative of Christiana Binker, Michele Binker, and Georgia Binker, Defendant and Third-Party Plaintiff,**

v.

**The TRAVELERS INDEMNITY CO., Third-Party Defendant.**

Civ. A. No. 83–3104 SSH.

United States District Court, District of Columbia.

July 15, 1987.

Christine A. Nykiel, Washington, D.C., for plaintiff.

David H. Cox, Edward C. Bacon, Landover, Md., for intervenor Nat'l Union Fire Ins. Co. of Pittsburgh (Workman's Compensation Div.).

John M. Clifford, Washington, D.C., William T. Freyvogel, Arlington, Va., for defendant and third-party plaintiff.

David P. Durbin, Washington, D.C., for Travelers.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment and on the motion of plaintiff's Workmen's Compensation Division for leave to intervene. Plaintiff, National Union Fire Insurance Company of Pittsburgh, Pa. (National Union), filed this suit on October 20, 1983, seeking a declaratory judgment that an automobile liability policy issued by National Union to The Evening Star Newspaper Company and Times News Holdings, Inc. (Evening Star), does not provide coverage for a fatal accident involving an unidentified motorist and defendant Bonnie Binker's late husband. Mrs. Binker and the third-party defendant, The Travelers Indemnity Company (Travelers), oppose the motions. (Travelers was the decedent's personal insurance carrier.)

### Background

This case has been stayed pending resolution of a related case in the District of Columbia's Article I courts. In *Doe v. Binker*, 492 A.2d 857 (D.C.1985), the District of Columbia Court of Appeals upheld a $200,000 damage award to Mrs. Binker and her three daughters against John Doe, the unidentified driver of the car that caused the accident in which Binker's husband died. This suit now involves enforcement of that judgment.

The defendant's decedent, Carl William Binker, Jr., delivered newspapers for The Evening Star, utilizing a truck owned and insured by The Evening Star. On September 5, 1979, at approximately 6:30 in the evening, Binker was returning to The Evening Star's facilities in the District of Columbia after finishing his Virginia deliveries. He was driving on the Rochambeau (14th Street) Bridge within the District of Columbia. Leon Towell, a 15-year-old "jumper," also was in the truck. It was raining very hard, visibility was poor, and there were high winds. According to Towell's testimony in the Superior Court of the District of Columbia, because of the adverse weather conditions Binker was driving below the speed limit with the truck's headlights on, and with the windshield wipers and defroster operating. Binker's truck was in the second lane from the left of the bridge's four lanes. A small Toyota truck was stopped in the same lane, but its lights and emergency flashers were not in operation. When Binker saw the truck, he swerved into the clear left lane. However, he lost control of the truck and hit the left side of the bridge's concrete guard rail. When Binker swerved back to the right, the truck tipped onto two of its four wheels. The truck crossed four lanes of traffic, fell on its side and slid into the right side of the bridge. After the truck came to a stop, a third vehicle, driven by Donald E. Peden, hit the truck, causing an explosion of its gas tank. Towell escaped from the burning vehicle, but Binker, sad-

ly, could not. He subsequently died. The District of Columbia Court of Appeals ultimately characterized the accident as one involving an "unidentified driver." (*I.e.,* the driver of the stopped Toyota which Binker swerved to avoid.)

The Evening Star's truck was insured with National Union. The insurance contract covered accidents involving uninsured motorists. Section V of the policy's Uninsured Motorists Insurance schedule defines two types of uninsured highway vehicles:

(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; or

(b) a hit-and-run vehicle;

\* \* \* \* \* \*

The policy defines a "hit-and-run vehicle" as:

a highway vehicle which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident, provided:

(a) there cannot be ascertained the identity of either the operator or owner of such highway vehicle;

\* \* \* \* \* \*

The policy complied with the District of Columbia's insurance laws in effect at the time of the accident. *See* D.C.Code §§ 40–401 *et seq.* (1981).

*Discussion*

### I. *Plaintiff's Motion for Summary Judgment*

National Union moves for summary judgment on the ground that the clear language of the insurance policy excludes coverage when, as in this case, there is no physical contact between the insured and the unidentified driver. Mrs. Binker does not challenge the textual meaning of the policy, but argues that Virginia law is controlling and that under that state's law the relevant policy provisions are void. Alternatively, Mrs. Binker contends that even if District of Columbia law is applied, the "contact" requirement of the hit-and-run provision is void as against public policy. Third-party defendant Travelers opposes the motion on the grounds that the terms of the insurance contract are ambiguous and that Virginia law should apply.

### A. *Application of District of Columbia Law*

There can be no serious doubt that enforcement of the insurance policy as written, will result in a denial of coverage. Under the terms of the policy, Mrs. Binker is entitled to benefits only if she can demonstrate that the unidentified driver's Toyota truck falls within one of the policy's two classes of "uninsured highway vehicles." *See Robinson v. Aetna Life Insurance Co.,* 288 A.2d 236, 238 (D.C.1972) (claimant must bring herself within the terms of the policy). However, because John Doe's true identity is unknown, she cannot prove that he lacks insurance.[1]

---

1. John Doe's legal liability has been conclusively established. *See Doe v. Binker,* 492 A.2d 857 (D.C.1985). Thus, the inability to identify John Doe appears to be the only potential barrier to Mrs. Binker's recovery. If she could identify Doe, she would recover either under Doe's insurance policy, or, if Doe were uninsured, under the National Union policy. Thus, it is clear that Mrs. Binker should recover from someone,

but it is impossible to determine who that someone is. (The Court of Appeals rejected the argument that Mr. Binker had been contributorily negligent.) Some states have remedied this sort of unfortunate circumstance by creating a statutory presumption that unidentifiable drivers are uninsured. *See, e.g.,* Tenn.Code Ann. § 56–7–1206 (Supp.1986). However, no such statute

Also, because there unquestionably was no contact between Doe's truck and Binker's truck, there was no hit-and-run.[2] Thus, Mrs. Binker may recover only if the Court declines to enforce the contact requirement of the hit-and-run provision.

■ The Court may not hold that the contact requirement is void as violative of the public policy of the District of Columbia. Although the District of Columbia courts have not addressed this issue, a number of courts in other jurisdictions have held that analogous physical contact provisions did not violate the public policy of their jurisdictions. *See, e.g., Grace v. State Farm Mutual Automobile Insurance Co.,* 197 Neb. 118, 246 N.W.2d 874, 877 (1976); *Buckeye Union Insurance Co. v. Cooperman,* 33 Ohio App.2d 152, 293 N.E.2d 293, 298 (1972); *Citizens Mutual Insurance Co. v. Jenks,* 37 Mich.App. 378, 194 N.W.2d 728, 731 (1971). Mrs. Binker provides no basis for concluding that the courts of this jurisdiction would construe "public policy" differently than those courts which have upheld the contact requirement.[3]

Moreover, it appears that when courts have refused to enforce contact provisions on public policy grounds, they have done so based upon a finding that the provision was in effect in the District of Columbia at the time of the accident.

conflicted with existing statutory language. *See, e.g., Surrey v. Lumbermens Mutual Casualty Co.,* 384 Mass. 171, 424 N.E.2d 234, 236 (1981); *Pin Pin H. Su v. Kemper Insurance Cos.,* 431 A.2d 416, 419 (R.I.1981); *Brown v. Progressive Insurance Co.,* 249 So.2d 429, 430 (Fla.1971). No such statute applies to this case. Accordingly, the Court may not hold that the District of Columbia courts would refuse, on public policy grounds, to enforce the insurance policy at issue.

### B.  *Application of Virginia Law*

The State of Virginia statutorily regulates uninsured motorist insurance, unlike the District of Columbia.[4] The Virginia Uninsured Motorist Act, codified at Va. Code Ann. § 38.1–381 (1981), requires the inclusion of uninsured motorist coverage in any automobile liability policy "issued or delivered" in Virginia, or issued by an insurer licensed to do business in Virginia, if the insured vehicle is "principally garaged or used in" Virginia.[5] *Id.* at § 38.2–2206(A). It is undisputed that National Union is licensed to issue policies in Virginia, and that The Evening Star truck driven by the decedent was not garaged in Virginia.[6] Thus, applicability of the Virginia

---

**2.** The Court rejects Mrs. Binker's suggestion that the hit-and-run provision may be satisfied through "constructive" contact. Although the issue has not been addressed by District of Columbia courts, the majority rule is that a contact requirement is satisfied only by actual physical contact between the insured's vehicle and the unidentified vehicle. *See, e.g., Ely v. State Farm Mutual Automobile Insurance Co.,* 148 Ind.App. 586, 268 N.E.2d 316, 320 (1971); *Lawrence v. Beneficial Fire & Casualty Insurance Co.,* 8 Ariz. App. 155, 444 P.2d 446, 449 (1968). Even those courts that have allowed recovery in the absence of direct contact have required indirect contact in which the unidentified vehicle makes contact with some intermediate object which then makes contact with the insured's vehicle. *See, e.g., Motor Vehicle Accident Indemnification Corp. v. Eisenberg,* 18 N.Y.2d 1, 271 N.Y.S.2d 641, 644, 218 N.E.2d 524, 526 (1966). Neither direct nor indirect contact occurred in this case.

**3.** In fact, as Mrs. Binker concedes in her opposition pleading, some states statutorily require physical contact as a prerequisite to recovery for damage incurred in a hit-and-run accident. *See, e.g.,* Cal.Ins.Code § 11580.2(b)(1) (Deering Supp.1986); N.Y.Ins.Law § 5217 (McKinney 1985).

**4.** At the time of the accident, the District of Columbia's Motor Vehicle Safety Responsibility Act, D.C.Code §§ 40–401 to 40–493, did not regulate uninsured motorist insurance.

**5.** The Virginia statute has been amended and recodified since the time of the accident. To avoid confusion, the Court refers to the code sections in effect at the time of the accident.

**6.** The affidavits of Robert C. Rawl, former supervisor of The Evening Star's Single Copy Department, and Richard H. Malat, a vice-president of the company that sold the National Union policy to The Evening Star, indicate that Binker's delivery truck, Truck Number 837, was garaged in the District of Columbia.

statute depends upon a showing that the vehicle was principally used in Virginia.[7]

The parties disagree on whether the "principally used" criterion is satisfied here. Consequently, it is impossible for the Court to determine on the record presented whether Virginia law applies. However, a factual issue is not "material" unless its determination potentially will affect the outcome of a case. If a District of Columbia court would refuse to enforce the Virginia statute regardless of whether the requisite conditions are met, the fact is not material and would not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, for the purposes of this Memorandum Opinion, the Court feels that it must assume that Binker's delivery truck was principally used in Virginia.

■ Although Virginia law does not expressly prohibit physical contact provisions like the one at issue here, such a prohibition may be inferred from the structure of the statute. Subsection (a2) of Va.Code Ann. § 38.1–381 provides:

> Any endorsement, provision or rider attached to, or included in, any such policy of insurance which purports or seeks in any way to limit or reduce in any respect the coverage afforded by the provisions required therein by this section shall be void.

Additionally, the statute specifies certain procedural steps that an insured must take before he may recover for damages suffered in an accident in which the identity of the negligent party is unknown and in which there was no physical contact between the two affected vehicles. *See id.* at § 38.1–381(d). Clearly, the statute envi-

sions uninsured motorist recovery in situations like the one at issue here, assuming, of course, resolutions of the type made in the District of Columbia's Article I court system. Given the policy that the Uninsured Motorist Act be construed liberally to effect its remedial purposes, *e.g., Tudor v. Allstate Insurance Co.*, 216 Va. 918, 224 S.E.2d 156, 158 (1976), the physical contact requirement must be considered to be in conflict with the statute, and therefore void.

Thus, the Virginia Uninsured Motorist Act, by its terms, reaches the policy at issue here, and, if applied, would lead the Court to deny National Union's summary judgment motion. However, as demonstrated above, District of Columbia law, also applicable on the facts of this case, leads to a different result. Accordingly, the Court must engage in a choice of law analysis to resolve the conflict. If that analysis reveals that the Court must apply District of Columbia law, the "principally used" issue is irrelevant and summary judgment may be granted. If, on the contrary, Virginia law should apply, summary judgment must be denied.

### C. *Choice of Law*

Because this Court's subject matter jurisdiction is based on diversity of citizenship, the Court must apply the forum's choice of law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed.2d 1477 (1941); *Stancill v. Potomac Electric Power Co.*, 744 F.2d 861, 864 n. 16 (D.C.Cir.1984). With regard to contract issues, the courts of the District of Columbia follow the governmental interest analysis adopted in the Restatement (Second) of Conflict of Laws

---

7. The Court is confident that the District of Columbia courts would uphold application of the Virginia statute to an accident occurring outside that state. The Virginia courts have held that the statute applies to out-of-state accidents in cases where application of the law is based on the fact that the policy was "issued or delivered" in Virginia. *See Hodgson v. Doe*, 203 Va. 938, 128 S.E.2d 444, 447 (1962); *see also Travelers Indemnity Co. of Hartford, Connecticut v. Wells*, 316 F.2d 770, 773 (4th Cir.1963) (applying *Hodgson* to accident occurring in Delaware). This case is a bit more attenuated because the

policy was issued outside Virginia, but it comes within the statute's reach by virtue of the fact that National Union is licensed to do business in Virginia. Nevertheless, the reasoning of the District of Columbia Court of Appeals in *Stevens v. American Service Mutual Insurance Co.*, 234 A.2d 305 (D.C.1967), in which the court upheld application of the Virginia statute to a mail order insurance policy issued by an Alabama company, suggests that the District of Columbia courts would recognize subject matter jurisdiction based on the statute's "licensed in [Virginia]" language.

(1971) (hereinafter referred to as the Second Restatement). *Clayman v. Goodman Properties, Inc.*, 518 F.2d 1026, 1030 n. 22 (D.C.Cir.1973); *Koro Co. v. Bristol-Meyers Co.*, 568 F.Supp. 280, 286 (D.D.C.1983); *cf. Estrada v. Potomac Electric Power Co.*, 488 A.2d 1359, 1361 n. 2 (D.C.1985) (application of the Second Restatement to tort cases). The Second Restatement's rule for interpreting automobile liability policies is set out in § 193, which provides:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Thus, if Mrs. Binker can demonstrate that her late husband's truck was principally used in Virginia, a prerequisite to application of the Virginia Uninsured Motorist Act, choice of law principles suggest that Virginia law will control. Conversely, if the truck was principally used in the District of Columbia, District of Columbia law will apply, both because the Virginia statute is inapplicable and because the choice of law analysis will select the District of Columbia.

The proviso in § 193 that choice of the state of principal use may be overridden if one of the interested states has the dominant relationship is not triggered in this case. Both Virginia and the District of Columbia have significant contacts with the parties and the circumstances of the underlying insurance claim. Neither jurisdiction's contacts are so overwhelming that application of the "location of the risk" standard would be inappropriate. *See* Second Restatement § 193 comment d.

## II. *Plaintiff's Motion To Intervene*

■ Plaintiff National Union also has moved, somewhat artificially, in the name of its Workmen's Compensation Division to intervene as a plaintiff. National Union bases this motion on the fact that its Workmen's Compensation Division has paid benefits to Binker pursuant to a workers' compensation policy. National Union alleges that it will be entitled to set-off the amount of workers' compensation benefits paid against any possible award to Mrs. Binker on the automobile liability policy. The Court need not consider the obvious difficulties entailed in allowing one agency to maintain two identities in the same case, because it finds that the set-off issue already has been adequately raised. The fourth defense in National Union's answer to Mrs. Binker's counterclaim is an allegation that any amount awarded on the counterclaim "must be reduced by the sum of workers' compensation payments made" to Binker. Thus, in its *alter ego* motion to intervene, National Union seeks to raise an issue that already has been raised adequately. The intervention motion is denied.

### *Conclusion*

■ While several preliminary issues may be determined as a matter of law, plaintiff's motion must be denied because one material fact—the location of the principal usage of the truck driven by the decedent—is in genuine dispute. It is clear, and the Court so holds, that the insurance contract is unambiguous and enforceable under District of Columbia law. However, the Court cannot decide whether District of Columbia law controls in this case because the dispute over where the newspaper truck was principally used prevents a complete choice of law analysis. If this dispute may be resolved on the basis of documentary evidence, summary judgment may still be appropriate. If the facts on this issue are sufficiently known to the parties to make settlement the inescapably appropriate result, that should follow. If an evidentiary proceeding is necessary, one shall be scheduled. An appropriate Order accompanies this Memorandum Opinion.

### ORDER

This matter is before the Court on plaintiff's motion for summary judgment and on

the motion of plaintiff's Workmen's Compensation Division for leave to intervene. For the reasons set forth in the accompanying Memorandum Opinion, after consideration of the parties' submissions and the entire record, the Court concludes that there is a material fact in dispute, and that the requested intervention is unnecessary. Accordingly, it hereby is

ORDERED, that plaintiff's motion for summary judgment is denied. It hereby further is

ORDERED, that the motion of plaintiff's other internal operating division to intervene is denied.

SO ORDERED.