Peter H. Galullo et al. *v.* City of Waterbury et al.

Loiselle, Bogdanski, Longo, Speziale and Healey, Js.

Argued February 15—decision released May 23, 1978

*Wesley W. Horton,* with whom was *Clifton A. Leonhardt,* for the appellants (plaintiffs).

*John F. Phelan,* assistant corporation counsel, for the appellees (defendants).

*William T. Barrante* filed a brief as amicus curiae.

SPEZIALE, J. The issue raised on this appeal is whether funds received by cities pursuant to General Statutes §§ 10-262c and 10-262d must, under § 10-262e, be used to *supplement* funds derived from city property taxes and allocated to education.

The plaintiffs here are two students, a teacher, and a guidance counselor in the Waterbury public schools, all of whom are Waterbury residents. They have appealed from a judgment of the Court of Common Pleas upholding the action of the Waterbury board of aldermen setting the tax rate at 84.75 mills instead of 87 mills as contained in the proposed budget. The board took that action after learning that the city would be receiving a much larger share of instant lottery proceeds pursuant to General Statutes §§ 10-262c to 10-262e than originally anticipated.

The underlying facts as found by the court are not in dispute: In March, 1977, the mayor of Waterbury submitted to the board of finance a proposed budget for the fiscal year commencing July 1, 1977. On April 29, 1977, the board of finance submitted its proposed budget for the coming fiscal year to

the board of aldermen. This proposed budget allocated $23,603,279 to the board of education, and showed income of $316,000 from the state of Connecticut representing Waterbury's share of guaranteed tax base funds derived from instant lottery proceeds. The budget specifically allocated these guaranteed tax base funds to the board of education. The proposed budget indicated total expenditures of $57,366,578, which would have required a property tax levy of 87 mills.

Between April 29, 1977, the date of submission of the proposed budget by the board of finance, and May 21, 1977, the date of adoption of the final budget by the board of aldermen, city officials learned that Waterbury's share of the instant lottery proceeds was likely to be $1,027,854 higher than previously anticipated. The final budget, which was adopted on May 21, 1977, for the fiscal year commencing July 1, 1977, allocated $23,603,279 to the board of education and showed income from the state of $1,343,854, all of which income was specifically allocated to the board of education. This budget showed total expenditures of $57,366,578 and a property tax levy of 84.75 mills.

The crux of the plaintiffs' claim on appeal to the Court of Common Pleas, and in their subsequent appeal to this court, is that the decision of the board of aldermen to reduce the mill rate without increasing the allocation to the board of education by an amount equal to the additional expected lottery revenues violated General Statutes § 10-262e. In other words, it is the plaintiffs' contention that funds received by cities pursuant to §§ 10-262c and 10-262d must, under § 10-262e, be used to *supplement* funds derived from city property taxes and

allocated to education. The city, on the other hand, contends that it has fully complied with the law by guaranteeing that all funds received from instant lottery proceeds will be used for education purposes only.

The plaintiffs urge that the legislative background of § 10-262e supports their interpretation of what is required by the statute. We disagree. Sections 10-262c to 10-262e were enacted at least in part in response to the trial court decision in *Horton* v. *Meskill,* 31 Conn. Sup. 377, 332 A.2d 113 (1974). See, e.g., 18 S. Proc., pt. 5, 1975 Sess., pp. 2382–2386; 18 H.R. Proc., pt. 8, 1975 Sess., pp. 3963, 3974. The purpose of the statutes was to provide increased financial assistance to towns with inadequate tax bases to finance education. See *Horton* v. *Meskill,* 172 Conn. 615, 636–37, 376 A.2d 359 (1977). Section 10-262e as originally enacted read as follows: "All aid distributed to a town pursuant to . . . [§ 10-262c] shall be expended upon the authorization of the town or regional board of education *for school purposes only.*" (Emphasis added.) Public Acts 1975, No. 75-341, § 4. Despite the condition imposed by the statute, some towns were spending the funds for other purposes. In response, the legislature amended the statute to clarify and emphasize the conditional nature of the grant. The statute in its present form provides that "[a]ll aid distributed to a town pursuant to the provisions of section 10-262c, shall be expended for school purposes only and shall be expended upon the authorization of the local or regional board of education." The remarks made in the senate in support of the amendment indicate that it was in fact intended to force the towns to distribute the aid to their boards of education. 19 S. Proc., pt. 6, 1976 Sess., pp. 2548–

2549. The plaintiffs argue that, in addition, the statute forces the towns to distribute the funds to their boards of education *without* reallocating any town tax revenues previously allocated to education. There is nothing in the wording of the statute or in its legislative history which would substantiate this argument. The statute clearly requires that the funds be spent "for school purposes only." The court found that the defendant specifically allocated these funds to the board of education, and used the money for educational purposes only; on this basis the court properly concluded that the city had discharged its obligations under the statute.

The legislative history of the amendment to § 10-262e indicates that legislators were aware of the possibility that tax-burdened cities might see the availability of additional state funds for education as an opportunity to reallocate existing city revenues and reduce taxes; see 19 S. Proc., pt. 6, 1976 Sess., pp. 2548–2555; nevertheless, the legislation was passed in its present form. Our role is to construe legislation as we find it, regardless of whether we think it might have been improved or a preferable result reached by the inclusion of other provisions. *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 507, 363 A.2d 1055 (1975); *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975); *Houston* v. *Warden,* 169 Conn. 247, 252, 363 A.2d 121 (1975); *Simonette* v. *Great American Ins. Co.,* 165 Conn. 466, 471, 338 A.2d 453 (1973). The simple answer to the plaintiffs' argument is that there is no provision in the present legislation which compels cities to use instant lottery funds to *supplement* the education allotment in their budgets. As long as the state funds are spent only for education, the statutory mandate is met.

We want to emphasize that our holding in this case is not in any way intended as a retreat from the position stated in *Horton* v. *Meskill,* 172 Conn. 615, 376 A.2d 359. On the contrary, the statutes now before us had already been passed in a form reasonably resembling their present form when we decided the *Horton* case. The impact of those statutes was part of the finding of the *Horton* trial court, derived from supplemental judgments in that case. There, the trial court found that "the effect of the additional lottery fund grant on equalizing the ability of . . . property-poor towns to finance education 'will be miniscule and not significant.'" Id., 637. Thus, our decision in *Horton* v. *Meskill* implicitly recognized that the statutes here in question are not an adequate means by which the state can meet its burden of providing equal educational opportunity for its school children. Id., 653.

There is no error.

In this opinion BOGDANSKI, LONGO and HEALEY, Js., concurred. LOISELLE, J., concurred in the result.

## APPENDIX

"[General Statutes] Sec. 10-262c. EDUCATIONAL EQUALIZATION GRANTS. (a) Each town maintaining schools according to law whose adjusted equalized net grand list per capita falls at or below the eighty-fifth percentile among all towns in the state, as determined by ranking in ascending order all towns in the state according to their adjusted equalized net grand lists per capita, shall be paid a grant, except as provided in subsection (b) or (c) of this section, in an amount equal to the product of (1) the school tax rate times (2) the difference between the adjusted equalized net grant list per capita for

the town at the eighty-fifth percentile and the adjusted equalized net grand list per capita for the town, times (3) the population of the town.

(b) Application for aid under the provisions of this section shall be made annually, before August first, by the secretary of the state board of education to the comptroller. The amount due each town pursuant to the provisions of subsection (a) of this section shall be paid by the comptroller, upon certification of the secretary of the state board of education, to the treasurer of each town entitled to such aid in instalments as follows: One-half in January and one-half in June; provided the total grant made in any year pursuant to this section to any town shall in no event exceed seven and three-tenths per cent of the total grant per pupil in average daily membership received by such town pursuant to section 10-262.

(c) All grants made in any year pursuant to this section shall be charged to and paid from the general fund, from funds specifically designated to be used for educational equalization grants to towns pursuant to the provisions of subsection (c) of section 12-568. In the event that in any payment period there are insufficient funds in the general fund specifically designated to be used for such grants, each town entitled to such grant shall, in such payment period, be paid an amount equal to its proportionate share of the total amount of such designated funds as are available."

"[General Statutes] Sec. 10-262d. EQUALIZED NET GRAND LIST. For the purposes of section 10-262c, the equalized net grant list of a town for the fiscal years ending in 1976, 1977 and 1978, shall be in each of said years respectively, the 1974, 1975 and 1976

grand list of such town divided by the stated assess-
ment ratio of such town and adjusted for the date
of last revaluation. To adjust for the date of last
revaluation, the net grand list shall be increased
by an annual average per cent increase, equal to
that experienced by the county in which such town
is located, compounded for as many years as the
difference between 1974, 1975 or 1976, whichever is
applicable, and the year of the last town revaluation.
The average annual rate of property value increase
shall be three and one-half per cent per year for all
towns located in Tolland, New London and Wind-
ham counties, five per cent per year for all towns
located in Hartford, Litchfield, Middlesex and New
Haven counties and eight per cent per year for all
towns located in Fairfield county."

"[General Statutes] Sec. 10-262e. GRANTS TO BE
EXPENDED FOR SCHOOL PURPOSES ONLY. All aid distrib-
uted to a town pursuant to the provisions of section
10-262c, shall be expended for school purposes only
and shall be expended upon the authorization of the
local or regional board of education."

Note that Public Acts 1977, No. 77-579, § 2,
repealed General Statutes § 10-262c and substituted
the following:

"(a) Each town maintaining schools according to
law whose adjusted equalized net grand list per
capita falls at or below the eighty-fifth percentile
among all towns in the state, as determined by
ranking in ascending order all towns in the state
according to their adjusted equalized net grand lists
per capita, shall be paid a grant, except as provided
in subsection (b) or (c) of this section, in an amount
equal to the product of (1) the school tax rate times

(2) the difference between the adjusted equalized net grand list per capita for the town at the eighty-fifth percentile and the adjusted equalized net grand list per capita for the town, times (3) the STUDENT population of the town PLUS ONE-HALF THE TOTAL POPULATION.

(b) Application for aid under the provisions of this section shall be made annually, before August first, by the secretary of the state board of education to the comptroller. The amount due each town pursuant to the provisions of subsection (a) of this section shall be paid by the comptroller, upon certification of the secretary of the state board of education, to the treasurer of each town entitled to such aid in instalments as follows: One-half in January and one-half in June; provided [the total grant made in any year pursuant to this section to any town shall in no event exceed seven and three-tenths per cent of the total grant per pupil in average daily membership received by such town pursuant to section 10-262] FOR THE FISCAL YEAR ENDING JUNE 30, 1978, NO TOWN SHALL RECEIVE LESS THAN SUCH TOWN'S GRANT RECEIVED PURSUANT TO SUBSECTION (a) OF THIS SECTION FOR THE FISCAL YEAR ENDING JUNE 30, 1977.

(c) All grants made in any year pursuant to this section shall be charged to and paid from the general fund, from funds specifically designated to be used for educational equalization grants to towns pursuant to the provisions of subsection (c) of section 12-568. In the event that in any payment period there are insufficient funds in the general fund specifically designated to be used for such grants, each town entitled to such grant shall, in such payment

period, be paid an amount equal to its proportionate share of the total amount of such designated funds as are available."

Public Acts 1977, No. 77-540, § 2, repealed subsection (c) of General Statutes § 10-262c and substituted the following:

(c) All grants made in any year pursuant to this section shall be charged to and paid from the general fund [, from funds specifically designated to be used for educational equalization grants to towns pursuant to the provisions of subsection (c) of section 12-568]. In the event that in any payment period there are insufficient funds in the general fund specifically designated to be used for such grants, each town entitled to such grant shall, in such payment period, be paid an amount equal to its proportionate share of the total amount of such designated funds as are available.

Finally, Public Acts 1977, No. 77-478, § 2, repealed General Statutes § 10-262d and substituted the following:

"For the purposes of section 10-262c, the 'equalized net grand list' of a town for the fiscal years ending in 1976, 1977 [and], 1978 AND 1979, shall be in each of said years respectively, the 1974, 1975 [and], 1976 AND 1977 grand list of such town divided by the stated assessment ratio of such town and adjusted, WITH RESPECT TO REAL PROPERTY, for the date of last revaluation. To adjust for the date of last revaluation, the net grand list, EXCLUSIVE OF PERSONAL PROPERTY, shall be increased by an annual average per cent increase, equal to that experienced by the county in which such town is located, compounded for as many years

as the difference between 1974, 1975 [or], 1976 OR 1977, whichever is applicable, and the year of the last town revaluation. The average annual rate of REAL property value increase shall be three and one-half per cent per year for all towns located in Tolland, New London and Windham counties, five per cent per year for all towns located in Hartford, Litchfield, Middlesex and New Haven counties and eight per cent per year for all towns located in Fairfield county, PROVIDED SUCH AVERAGE ANNUAL RATE OF REAL PROPERTY VALUE INCREASE IN ANY CITY IDENTIFIED AS A CENTRAL CITY WITHIN A STANDARD METROPOLITAN STATISTICAL AREA AS SUCH CLASSIFICATION IS USED IN THE 1970 FEDERAL CENSUS SHALL BE THREE AND ONE-HALF PER CENT PER YEAR."

The changes in the statutes are not relevant to our decision in this case. Therefore, for the sake of convenience, the opinion refers to §§ 10-262c and 10-262d, even though the formulae set forth in those statutes have since been altered.