[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case involves a claim of nonpayment on an insurance claim in which the plaintiff, the named insured, sought compensation for personal property she reported to have been stolen from her home on March 17, 1992. The defendant claimed in special defenses that it denied the claim under provisions of the policy that excluded claims involving concealment or misrepresentation.
This case was claimed for trial by jury. When jury selection was about to begin, the parties both agreed to waive their right to jury trial and to proceed to a nonjury trial. Only the first count of the complaint remains to be decided, the plaintiff having withdrawn the second, third and fourth counts on the record in open court.
The plaintiff, Nicole Candido, testified concerning her claim of property loss in a burglary, the items she claimed were taken, and the circumstances concerning the procuring of the insurance coverage under which she made her claim for compensation. She called no other witness in support of her claim. The parties stipulated that the plaintiff's father, Joseph Candido, the only witness to the burglary, was unavailable to testify because he was hospitalized. The plaintiff's mother, who lived with the plaintiff at the time of the burglary, was not called as a witness as to any of the issues. The plaintiff presented portions CT Page 7460 of the deposition testimony of her father, a deposition from John Eby on the issue of the value of certain property claimed to have been stolen, and numerous documents.
The facts are very much in dispute. Joseph Candido gave differing accounts of the burglary on different occasions. Though the plaintiff alluded to the fact that he was in his eighties at the time of the events and statements at issue, the court received no information to suggest that he was impaired in his ability to recount what he had experienced when he was asked to do so by police and others.
After carefully analyzing the evidence and making determinations as to credibility, the court finds the facts to be as follows.
The plaintiff, who was forty-eight years old at the time of the trial, has lived with her parents, Maria and Joseph Candido, in a single family home at 765 Townsend Avenue in the Annex section of New Haven since about 1967. Between 1986 and February 6, 1991 the plaintiff's parents owned the home and insured it through the Hartford Insurance Company. On December 7, 1990, that insurer sent the Candidos a notice of nonrenewal. The Candidos had filed seven claims totalling over $80,000.00 from 1987 to 1991; and the Hartford gave its reason for declining to renew the following: "Increase in hazard associated with reckless acts or omissions of the named insured resulting in the 03-08-86 fire loss from cooking materials on hot stove, 05-23-87 explosion from an aerosol can left next to a running dish washer and 10-26-90 water damages from overflowing of tub."
Soon after receiving the nonrenewal notice, Marie Candido called a different insurance agent than the one that had obtained the Hartford coverage. That agency's representative, Ruth Hubbard, was acquainted with the Candido family. Marie Candido supplied Hubbard with information concerning the residence and the coverage desired. Hubbard entered this information and information she secured from city tax records on an application for insurance which she sent to Marie and Joseph Candido as owners of the property. On some date after December 11, 1990 but before January 2, 1991, Nicole Candido telephoned Hubbard and advised her that Nicole's parents were deeding the house and other property to her and that the insurance should be obtained for her as the name insured. Hubbard wrote Nicole Candido's name in over her parents' on the application and made no changes in CT Page 7461 the information contained in the document. The plaintiff signed the application on January 2, 1991. The application contained as question 10 "Any insurance declined, cancelled or non-renewed (last 3 years?)". In the box following the question, "No" is checked. In the box headed "Loss History", the word "None" appears. This court finds that these representations were on the form when Nicole Candido signed it. Ruth Hubbard noted on the application that "This property was recently transferred from Marie Candido to her daughter Nicole Candido. Nicole has always lived at home." Hubbard bound coverage with the defendant effective February 6, 1991, and the defendant issued a one year policy on the basis of the application.
While the defendant claims that the plaintiff concealed information sought in the application, the court finds instead that the application was unclear as to whether "history of loss" was the individual applicant's history as to the property at issue and whether the nonrenewal question related to the property or the applicant. Hubbard did not attempt to clarify the situation but took the position that the questions could be answered as to Nicole Candido's history of ownership of the property and need not reflect the facts as to her parents as prior owners. Such a course plainly enhanced the chances that the application would be approved and Hubbard would complete a transaction. Hubbard otherwise revealed herself to be a flexible purveyor of insurance; she indicated on the application that she had known Nicole Candido for twenty-five years while at trial she claimed only very slight acquaintance for a much shorter time.
One of the claims made under the Hartford policy was a claim by Nicole Candido as an unnamed insured when she was mugged at the New Haven railroad station in October 1990. This court does not find that Hubbard either read the defendant's procedures as requiring such an off-premises claim to be listed or that she communicated to the plaintiff the need to list claims that did not relate to the premises but to herself personally even when the plaintiff was not the named insured. The court finds that the failure of Nicole Candido to list her claim for personal property from the mugging was not a willful, knowing or conscious attempt to conceal information that was explained to be required. It appears that Hubbard limited her inquiry to the loss history of the property under Nicole Candido's ownership and that no representative of the defendant ever communicated to the insured that a different scope of information was required. CT Page 7462
The policy issued by the defendant insured the seven room brick house for $145,000.00 and provided $105,000.00 of coverage for personal property at replacement cost (see H.O. 250), along with liability coverage with a limit of $500,000.00.
The coverage for personal property limited coverage of unscheduled jewelry and furs to $1,000.00, of unscheduled firearms to $2,000.00, of unscheduled silverware to $2,500.00. The plaintiff, who testified that she told the insurance agent that her house was filled with antiques and valuable collectibles, did not seek to schedule any items for full value coverage beyond the limits stated in the policy as to such categories of property as furs, jewelry and art.
The Worcester homeowner's policy was renewed for a second year. On March 17, 1992, while Joseph Candido was home alone in the late afternoon, a woman and two men got him to open the door and pushed their way into the house. The woman held him at gunpoint while the men went through the house stealing items.
The case incident report prepared by the New Haven police officer who responded to the report of the burglary quotes Joseph Candido as saying that the male burglars were looking for a safe and the female burglar urged them "Hurry up, let's get out of here." The police report states that Nicole Candido "stated to this officer that taken from the premises by the perpetrators was jewelry and fur coats worth over $10,000.00 in cash, and, also, $450.00 in cash that belonged to her father, the complainant, Joseph Candido, was taken during this burglary at 765 Townsend Ave."
On March 18, 1992, Ruth Hubbard, the agent through whom the plaintiff obtained the homeowner's coverage, sent a Property Loss Notice to Worcester Insurance Company. The description of loss, apparently obtained from the plaintiff, reads as follows:
 Ins. and mother shopping, 80 year old father home, opened rear door to give persons directions and one female and two males pushed him into the door at gun point knocking him down.[sic]. They threatened to kill Broke most items in the den and stole money, furs, jewelry, coins various other expensive items.
When a police officer returned the day after the burglary, the plaintiff told him that the following items had been taken: a CT Page 7463 khaki duffle bag containing several old handguns and shotguns; three rings containing diamonds, a black leather skirt and jacket, a gold jewelry box, a gold picture frame, a box of Kenneth J. Lane costume jewelry, 42 Hermes silk scarves, two fur coats and "5 boxes" of Flora Danica Royal Copenhagen China.
The plaintiff who exhibited great familiarity with expensive brand-name merchandise despite having modest income, testified that she had always been aware that the china she listed as stolen was extremely expensive. She produced a 1981 retail price list indicating prices ranging from $425.00 for a single salad plate to $3,875.00 for a covered soup tureen. The plaintiff testified that this china had been bought by her grandmother and that it had never been used or displayed but had been kept in cardboard boxes in the unfinished portion of the basement of the house. The plaintiff described the china collection as including twelve place settings and numerous specialized serving pieces including an "ice cream dome". She provided no documentation of the purchase of the china, no appraisals of it, no prior listing of the pieces, and no photographs of it.
The plaintiff's estimation of the value of the china was $128,000.00, that is, close to the insured value of the house itself. If she indeed owned such an asset, it would appear that after a burglary she would have checked at once to see if it was missing. She claims not to have done so until several hours after the burglary, and she did not mention this very valuable property in describing the property loss on March 18 to her insurance
Within days of receiving the Notice of Loss, the defendant asked the plaintiff to fill in a detailed list of the property stolen. The forms required the insured to swear to the truth of the statements. The plaintiff did not complete the form.
The defendant sent Neal Waters, an insurance adjuster, to the plaintiff's home. Mr. Waters recorded and had transcribed a statement from Joseph Candido as to the areas of the house that the burglars had entered.
In this statement, which is dated June 18, 1993, Mr. Candido said that the men had gone into the cellar and that he saw them come up from the cellar each carrying pairs of pillowcases, one in each hand, that they handed two fur coats to the female and left through the same door they had came in. Mr. Candido stated that the burglars came in and went out only once, carrying the CT Page 7464 heavily laden pillowcases. Over three years later, this witness testified that he had heard the male robbers open the cellar hatchway door and that they "didn't come out through upstairs" and that they called to their female accomplice from outside to come out and never entered the house again. Mr. Candido denied remembering the statement he gave to Waters.
Marie Candido did not testify, though she was a witness who could presumably have confirmed the existence and location of the Royal Copenhagen china. In a portion of a deposition of Marie Candido that was presented into evidence, she stated that the family had experienced prior burglaries at 765 Townsend Avenue.
The plaintiff did not submit to the defendant a list of the claimed missing items until October 21, 1992, approximately seven months after the burglary. The list she prepared, Exhibits G and H, includes numerous items never mentioned to the police or to Ruth Hubbard, notably, the china, several expensive leather handbags claimed contain jewelry, a silver George Jensen compote claimed to be worth $4,500.00, he driver's license, a stamp collection, and eyeglasses. Some of the items listed for the police are not on the list. The plaintiff testified that the stamp collection was in a shopping bag under her bed along with a shopping bag containing a coin collection. The plaintiff did not explain why she had immediately discovered the loss of one bag but only later discovered the loss of the other.
This court concludes that the plaintiff expanded her list of missing items in order to attempt to recover a large amount from her insurer. Even the non-china items she listed in Exhibits G and H would not have fit in the four pillowcases described by her father as having been carried by the burglars. The court does not believe the claim that the burglars removed the china described. It is incredible that such an asset would be stored as described, in a house that had had prior burglaries, with no photographic documentation, no listing of items, and no corroborative appraisal or testimony to confirm the existence and value of a china collection worth almost as much as the house. The defendant presented evidence to the effect that the china the plaintiff listed would, boxed, weigh over a hundred pounds. Joseph Candido's initial descriptions of the movements of the burglars is inconsistent with a removal project of the scope such property would require, and the court finds that his dramatically changed account three years later was untruthful in aid of his daughter's claim for $128,000.00 in compensation. CT Page 7465
The plaintiff presented the defendant with bills for repair of property damage claimed to have been done by the burglars. The defendant has refused to pay the plaintiff for any part of her reported losses arising from the March 17, 1992 burglary and has claimed as a special defense that the insurance policy excludes any obligation to pay as to a claim in which an insured has engaged in concealment or fraud or misrepresented the scope of items stolen.
Claims
The plaintiff claims in the only remaining count of her complaint that the defendant failed to fulfill its obligation under the contract of insurance by failing to compensate her for losses covered by the insurer.
The defendant has admitted that the policy on which the plaintiff bases her claim was in effect on March 17, 1992 but has denied that the losses claimed by the plaintiffs were included in the terms or conditions of the policy.
The defendant has claimed as special defenses 1) that the plaintiff's claims are either not covered under the policy provisions, or excluded by the express terms of the policy as set forth in Sections I and II, entitled "Concealment or Fraud"; 2) that the plaintiff intentionally concealed or misrepresented one or more material facts relating to the to the insurance; 3) that the plaintiff made false statements or engaged in fraudulent conduct relating to the insurance and 4) that the claims are not covered "as it is not likely that said item of personal property have been stolen"; and 5) that the damages were caused by non-covered events, such as wear and tear.
Defenses Based on Application
The defendant's special defenses relate to the procuring of the coverage at issue and also to the plaintiff's presentation of her claim. With respect to the former issue, the defendant claims the plaintiff fraudulently concealed information that she was asked to supply in connection with her application for coverage. As has been found above, the underwriting standards of the defendant were not explained to the plaintiff. This court has found that Ruth Hubbard led the plaintiff to believe that the questions on the application related to her own history as an CT Page 7466 owner of the insured property. While the property transfer from her parents may well have been motivated at least in part as a solution to their inability to get insurance because of their history of filing numerous claims of property loss, it appears that the agent treated the transfer at face value and did not take the position that the plaintiff must respond to the questionnaire as if she had previously been a named insured as to 765 Townsend Ave. Ms. Hubbard disclosed the recent transfer in the remarks section of the application. The defendants accepted the application and did not require the agent to have it filled in again as to the history of the property before the plaintiff's ownership. Having been advised that the plaintiff had been a resident (and therefore an unnamed insured) as to the property before owning it, the defendant did not require her to supply information as to her losses in that capacity. On its face, the application did not require a different scope of disclosure than the plaintiff provided as the new owner of a premises.
The defendant's witness, Michelle Pignataro, admitted that even in the defendant's own underwriting standards, "risk" is not defined, and it is ambiguous whether the property is "the risk" or whether it is the applicant who is "the risk", or whether it is the applicant only in her capacity as owner of the property to be insured who is "the risk". If the defendant meant to rely on an applicant's entire claims history, including claims arising from, for example, motor vehicle accidents or claims against the coverage of others, it should have made such scope clear. Since even its own agent, Ruth Hubbard, did not interpret the scope of disclosure as the defendant now does, this court finds that the application was not intentionally fraudulent but was rather accurate under the narrow view that the questions applied to the applicant's ownership of the particular premises.
The defendant has noted that Marie Candido answered the questions on the application in precisely the same way as her daughter. Since no insurance was written by the defendant as to the mother's application, the inaccuracy of her answers as owner of the property are not within the claims to be decided.
The court finds that the special defenses have not been proven as to the procurement of the insurance at issue.
Misrepresentation as to Claim
The Connecticut Supreme Court has ruled that an insurer who CT Page 7467 claims the special defense of concealment or misrepresentation as to a claim "must prove only that the insured wilfully concealed or misrepresented a material fact with the intention of deceiving the insurer." Rego v. Connecticut Insurance Placement Facility,219 Conn. 229, 346 (1991); Chauser v. Niagara Fire Ins. Co.,123 Conn. 413 (1937). The Supreme Court ruled in Rego that "in the case of an insurance contract, the consequences of the alleged concealment or misrepresentation is the forfeiture of a contractual benefit, and therefore the burden of proof normally applicable to contractual claims the preponderance of the evidence standard, should control. Rego, 219 Conn. 347; citingMutual of Enumclaw Ins. Co., v. McBride, 667 P.2d 494 (1983). The claimed misrepresentation in Rego concerned the cause of fire claimed to be an accidental loss, an issue the Court characterized as a claim of misrepresentation "concerning a claim for coverage". Rego, 219 Conn. 344.
The policy provision which the special defense invokes is as follows:
 2. Concealment or Fraud. The entire policy will be void if, whether before or after a loss, an insured has intentionally
a) concealed or misrepresented any material fact or circumstance;
b) engaged in fraudulent conduct; or
c) made false statements;
to this insurance.
The Court in Rego construed the phrase "relating to the insurance" with regard to the claim at issue in that case as including misrepresentations concerning a claim of loss.
The plaintiff claims that the defendant cannot invoke this exclusion because it did not cancel the policy. It is not reasonable to construe the cited policy term as requiring an insurer to cancel a policy in order to treat the obligation to pay a particular claim as void. Contracts of insurance are to be construed in the same manner as other contracts, such that they are given a reasonable interpretation and the words used are to be given their common, ordinary and customary meaning. AetnaCasualty Surety Co. v. CNA Ins. Co., 221 Conn. 729, 786 (1992). The provision that the "policy" is "void" in case of misrepresentation is reasonably read as meaning that the insurer CT Page 7468 does not have to fulfill its stated duties as to a claim containing material misrepresentations. "Void" is not defined in the contract of insurance at issue. The adjective is defined in Black's Law Dictionary as follows: "Constituting a nullity. Binding on neither party and not subject to ratification . . . Sometimes construed as `voidable'. . ."
According to Couch on Insurance 2d, at § 38:129, "[w]here the insured completes a sworn proof of loss and inflates the amount of his loss, he is attempting to defraud the insurer and as such may be denied any recovery with the policy."
The plaintiff has argued to the effect that if the provision at issue is ambiguous as to whether "void" means "subject to cancellation" or "not requiring compliance", the ambiguity should be read in favor of the insured. It is difficult to see how a construction depriving the insured of the remaining term of coverage, not just of coverage for the particular claim, favors the insured, especially since the evidence established that the defendant later paid a large claim for property damage under the policy. The Supreme Court has noted that the possibility of differing constructions does not mean that the court should distort provisions to accord a meaning other than that evidently intended by the words. Heyman Associates No. 1 v. Insurance Co.of Pennsylvania, 231 Conn. 756, 770-71 (1995); Weingarten v.Allstate Insurance Co., 169 Conn. 502 (1975). The words of the exclusion relied on plainly signal that the insurer's obligations do not apply to fraudulent claims or claims including misrepresentations. This court does not find that the defendant waived that provision by not cancelling the policy immediately, but that it properly treated the policy as void as to the particular claim in which it determined that misrepresentations had been made concerning the extent of the loss.
This court has found that the plaintiff misrepresented the extent of the property taken from her home, listing many more valuable items than could have been contained in the four pillowcases described by her father as having been taken by the burglars. The misrepresentation was intentional, willful, and material. It was not the result of inadvertence or negligence or hasty inspection. The plaintiff's proof of loss was submitted several months after the burglary, with a full opportunity for accuracy.
This court finds that the defendant has established that the CT Page 7469 exclusion invoked in its special defenses applies to the plaintiff's claim and that the plaintiff did not prove by a fair preponderance of the credible evidence that she sustained all the losses she reported to the defendant.
Conclusion
Judgment shall enter in favor of the defendant, which shall recover its statutory costs upon submission of a bill of costs to the clerk of the court.
Beverly J. Hodgson Judge of the Superior Court